We'll begin with United States v. Lee. Counsel. Good morning, Your Honor. Jason Carr, appearing on behalf of Appellant Denise Locadani-Lee. This is an issue that delves into interpretation of a sentencing guideline provision, so it's instructive to start with the dominant law of interpretation. And as President makes clear, that all the statutory canons of interpretation apply with equal force to the sentencing guidelines. And as recent case law as laid down by the Supreme Court and this Court has made clear, the primary and if not the dispositive canon of interpretation in these instances is plain language. Counsel, help me on a preliminary issue. Since her sentencing, I think her sentencing was after November 1, 2007, but the judge used the 2006 guidelines. Is that right so far? Your Honor, if I ñ one moment, Your Honor. I believe that he did ñ he may have used those guidelines at least in regard to the guideline, the base offense level calculations with the drug quantities and the leadership enhancement, but those would not have changed between 2006 and 2007. I think the old manual treated sentences imposed the same day as a single sentence if the cases were consolidated for sentencing and related, and the new manual doesn't require that they be related. And I was wondering if ñ it sounds like this issue has not been a focus, though. You're exactly right, Your Honor. And one difficulty I have here is that this is a plain error review, assignment of error. There was no objection made at the lower court. So the issue ñ the only change of note between the 2006 and 2007 guidelines is the change in related case doctrine, which, of course, is directly pertinent to this assignment of error. But the guidelines make clear that you apply the guidelines that are operative at the time of sentencing, assuming there's no ex post facto consideration to the defendant. And here the guidelines are more capable. So is it plain error? Would it have made a difference? And is it plain error to have applied the 2006 manual? It would be error to apply the 2006 manual, but it does not affect any of the other sentencing calculations. Would it have made a difference in the sentence because of the related requirement? It does change the related case formulation. There was a significant change in that formulation. I know it does. Would it have affected the calculation? It would conceivably, not to evade the question, but the change from 2006 to 2007, there was a change in the formulation of related case doctrine. It went from this relatively complex, fact-intensive multivariant analysis in 2006 to a very plain, almost per se, it applies or it doesn't apply test in 2007. It greatly simplifies the test. Under the simplified test, it's clear that since these two related criminal clusters. Wait a minute. I don't think you understand my question. Sorry. I'm not really asking what the rule is. I'm asking whether it would have made a difference to Lee's 235 months to serve. It would not have made a difference in any of the calculations as far as the grid and the offense level and criminal history calculations. The only impact it has. My next question then. 235 months seems like a lot of time for fairly routine, small-time meth dealing. On the other hand, she's got a huge rap sheet, including two armed robberies, and she did it with her 25-year-old son. And there's no objection to anything. It's sentencing that matters. So you need plain error. It is plain error. I don't exactly get what the best point for cutting the sentence is, reversing and vacating and cutting the sentence. The best point is that there is procedural error in the imposition of sentence because under the 2007 guidelines, which should have applied, it is reasonably clear, and it's very clear in my estimation, that these two criminal history clusters should have been considered related, which would have changed the criminal history category from a 5 to a 4, which does impact the sentencing range. It's about a 25-month difference approximately for Ms. Lee, which is significant. It's two years of her life. That's what I was trying to find out before. I'm sorry for not answering more directly. So she'd get about two years less? Yes. Yes. The schematics of it, to the extent the Court's interested, she's a total offense level 34, which would not change if I were to win. She goes from a 235 to 293-month sentencing range, 34 and 5, to a 210 to 262, 34 and 4. And she received low end last time, so I would have an argument that she should receive low end this time, so approximately a 25-month difference. Now, one of the arguments that the government makes is that they lost an opportunity to argue that CH4 would underrepresent her criminal history, but my position, a big part of their answering brief talks about that, but my position is that so long as the Court does not reduce the scope of the remand, it would be fair for them to make that argument at resentencing if they believe it applies. I had a question about the PSR. When I look at the forgery one, which is the question about whether there was an intervening arrest associated with that, that was Item 48. On the far left-hand column, it says date of arrest, and on Item 48 it says May 2, 1988. In the briefing, though, it indicates that the date of arrest was unknown. What's the purpose of that column? Can you explain that? Your Honor, the only ñ this is a failing on my part, and the only excuse that I have for that is that there had been a number of iterations of the PSR, and I may have been examining one of the previous iterations before the revised PSR was created, which wasn't as clear about the date of arrest as the revised and final PSR is, but you're exactly right. The left-hand column does say that the date of arrest is May 2, 1988, which, of course, is very supportive of my position. The interesting legal question here is the issue that there doesn't seem to be any precedent on, remarkably enough, is that does any intervening arrest count, or does it have to be an arrest for the offense that constitutes one of the two criminal clusters that we're talking about? In other words, the guidelines say, about as clear as something could be said, that the intervening arrest has to be related to the first offense. Here what we have is the first, the forgeries occur that are described in Paragraph 48, and then approximately a year and a half later, there is an arrest for robbery. The Hawaiian courts sentence her for both the forgeries and the robberies together. The plea is taken together. The sentences are imposed together. So the question is, was she arrested for the first offense before the commission of the second offense? And this record demonstrates that there's no evidence in this record that she was. In fact, the record seems to indicate that she was not. The government's rejoiner is that if you look on the paragraphs 41 through 44 of the PSR, that there are a number of minor incidents that seem to have occurred after the forgeries but before the robberies where Ms. Lee had some involvement with Hawaiian courts, and one of them was for a pedestrian on a roadway, which obviously isn't related to either of the two criminal offenses, and there's a shoplifting charge and some contempt charges. So the government's argument would be, I suppose, that any intervening arrest will disqualify application of related case doctrine, but the difficulty, of course, they have with that is that they send a guideline, say, to the contrary. Of having this intervening arrest business in the guideline. Well, the case law seems to be pretty clear that the idea behind it, which is a reasonable idea, is that if you commit a crime and you're arrested and booked for it and you're released and you go out and immediately commit another crime, that that is indicative of a lack of rehabilitation and recidivism. That makes it appropriate to treat that person more severely under the guidelines as somebody who engages in a pattern of criminal behavior. And although we don't know exactly what the commission was thinking when they limited the arrest to the arrest for the first cluster, probably one of the things they are anticipating is to avoid a situation like this where you have these intervening arrests for really petty, minor traffic citations and misdemeanor matters that don't have the same probative force as I commit a bunch of armed robberies, I'm arrested and booked and now I'm bailed and I commit more crimes. Doesn't it seem sort of whimsical to have anything turn on whether a particular municipality has a catch-and-release practice or doesn't have that kind of a practice? Well, Your Honor, it wouldn't matter. In fact, there's a case, Morgan, which both I and the government rely upon, a Seventh Circuit case, where the issue was an individual was charged with driving on a suspended license. They're cited for that and released. They weren't even arrested. And then later on, they get another misdemeanor offense. And the question is, are those two misdemeanor offenses related in the court? And the Seventh Circuit said it doesn't matter whether they are arrested or cited and released. There was police involvement because of the first offense. So the difference in this case is that the intervening arrests have nothing to do with either of the two criminal clusters. And that's what makes this case different from the other cases that are cited by myself and the government. If the record doesn't show any connection between these intervening, so-called intervening arrests, then should the court just ignore them? Well, the court, no. There's two aspects here. The first is the relatively mechanical road application of determining criminal history points, which is almost more of a mathematical exercise than anything else. It sounds more like the infield fly rule. Partly. But the guidelines themselves have an ameliorative rule here, which is a 4A1.3 departure mechanisms, where the court, if there is an injustice that occurs because of the little application of related case doctrine, the court is free to either to upwardly depart on the criminal history category or downwardly depart. So any inequity that's caused by the plain language, routine application of the guidelines to the assessment of criminal history points can be fixed by the district court in the cases of inequity. So the court shouldn't be too concerned about the fact that in some situations there may be an unfair result, because the court can fix it. I'm a little bit. I am. I am. Thank you. Good morning. Peter Levitt for the United States. Your Honor, this case must be viewed through the prism of plain error review as defendant concedes on appeal. Counsel, that, of course, is correct. And most of the issues are probably subtle enough not to be plain. But using the wrong book, that strikes me as something that could be plain so that you go to the next several criteria, whether it makes a difference and whether justice requires doing something about it. Why isn't it plain error to use the wrong book? Your Honor, I believe that if the wrong version of the guidelines were used, that it would indeed constitute error. I'm not entirely certain, and I don't believe defendant is entirely certain. Why wouldn't it be the wrong edition? As I recall, the guidelines say for all sentencing after November 1, 2007, use the 2007 book unless the sentence would be more lenient with the previous book. They don't use the book at the time of the arrest, I think it is. They don't use those exact words, but that's pretty clearly what they say. Yes, Your Honor. So why is there a dispute the sentencing was after November 1? Your Honor, I believe Your Honor's articulation of the correct book to use is correct. I believe also that defendant has essentially conceded that it wouldn't have made any difference to this particular defendant's guideline. I thought it was we did a lot of dancing around on that, but I thought where we wound up was it would make 25 months difference if she got minimum, the bottom end of the guidelines in both cases. No, Your Honor. I believe the point is that if the defendant showed that the forgeries and thefts that ended in January of 1987 were not punctuated by an intervening arrest, in other words, they were related to the four separate robberies that occurred five months later, then the defendant, rather than being in criminal history category 5, would have two fewer criminal history points and be in criminal history category 4, have a guideline range of 210 to 262 months as opposed to 235 to 293 months, and that the low end of the adjusted one for which the defendant is now arguing would be 210 rather than 235 months. To answer Your Honor's question, even assuming the wrong book was used and that there was plain error, the fourth requirement under Ameline is not just that there be error, that it be plain and that it affects substantial rights, but also that the forfeited error be such that it seriously affects the fairness, integrity or public reputation of the judicial proceedings, and here we do not have that. I think Your Honor touched on this earlier during Your Honor's questioning. This defendant did not sell an enormous amount of methamphetamine in this case, but it's important to consider the record that was ---- The case caught my attention because the sentence is really long for a low-level meth dealer. On the other hand, she has a really bad record. She does have a really bad record, Your Honor, but in addition to that, in this particular case, this case arose out of an authorized Title III wiretap on this defendant to investigate this defendant's drug trafficking activities in Las Vegas. This was all before Judge Sandoval at sentencing. And in addition to the three charged drug sales in the indictment, the defendant also had three uncharged methamphetamine sales. That's an excerpt of the record at 93. This defendant also assured the undercover police officer that she could supply him with pound quantities of methamphetamine. That's an excerpt of the record at 105 to 106. Did she ever get caught dealing a pound so that we can tell whether she was just bragging? Your Honor, I believe ---- I don't know the answer to that. I do know that by going up on a Title III wiretap on this defendant, there must have been something that interested law enforcement in her. Could I get back to the language of the sentencing guidelines? I'm looking at the 2007, which is the one that was discussed in your brief. The plain language here says that prior sentences are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest, i.e., the defendant is arrested for the first offense prior to committing the second offense. I'm troubled by the language in that parenthetical. And you attempt to say, well, any arrest is an intervening arrest. But that language seems pretty clear that we're looking only at those situations where the defendant is arrested for the first offense prior to committing the second offense and the specific offenses at issue. So what am I to do with the language in that parenthetical? I believe several things, Your Honor. First of all, we're looking at this through the lens of plain error review. It's the defendant's obligation at this juncture to point to record evidence proving that the arrest for the forgery and theft was not intervening, that the forgery and thefts from January 1987 are related to the June 1987. The PSR does have that. It says the arrest for the forgeries, I think, have a date, May 2, 1988. Your Honor, my version of paragraph 48, the left-hand column says 5-2-88, age 27. Well, but if you look on to the beginning of that section, that column is labeled date of arrest. So if you look on page 9 of the PSR, it says date of arrest, conviction, date sentenced, guideline section. So that those headings, I presume, seem to carry through that section, Part B, defendant's criminal history. Your Honor is correct. I would then point out as an alternative argument that in U.S. v. Morgan, we had a case where there was no arrest. As Your Honor points out, the plain language of the guideline says there has to be an intervening arrest for the first offense. Here, there was an inter-in Morgan, rather, there was an intervening citation for the first traffic infraction. There was clearly and unambiguously, and this in the Seventh Circuit was raised at the district court level, no arrest whatsoever. The point as the Seventh. Are you saying we should ignore that language? No, Your Honor. I believe that in the context of plain error review, the issue is. Well, the first question is, is it an error? And so my question is, is there an error because there was no intervening arrest as defined in that section? Your Honor, if the defendant was arrested for the forgeries and thefts after the June 1987 commission of the robberies, then that would not be an intervening arrest. What would be left with is three separate misdemeanor citations and appearances, admittedly not for the first cluster of offenses, the forgeries and thefts, but three separate court appearances and three separate convictions in Hawaii State Court. I believe that this gets to what's really underlying the Seventh Circuit's opinion in Morgan and Judge Goodwin's question earlier about what's the purpose of the intervening arrest rule. The purpose is to make sure that there's not over-representation, that somebody who goes on a crime spree does not, through clever charging practices of the prosecution, get over-represented and over-counted. That's not what's going on here. Now, the application notes that you cite seem to indicate that the correct way to address that, if there's a problem with under-representing the seriousness of the defendant's criminal history, that's application note three, is a, I guess an upward departure may be warranted. So you do the calculation correctly, you count them as a single offense, but then do an upward departure. So it doesn't seem to indicate that we take the policy and read that into the language of how you calculate whether it's a single sentence or a multiple sentence. Your Honor is correct. I would also point out, though, that in connection with the June 1987 robberies, there was one charged in one case and three robberies, all four on the same day. Three others charged in a separate state court case. If one looks at paragraph 45 of the PSR, the probation office noted these offenses are related for criminal history category purposes. That's precisely what the commission was concerned about. This was a spree that took place on a single day, and we don't want it over-represented. The fear here is under-representation. If robberies and thefts from January are deemed to be, through the prism of plain error review, related to robberies that occurred in June. Thank you, counsel. Yes, we did. Thanks.
judges: Goodwin, Kleinfeld, Ikuta